# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| BAILEY RIDGE PARTNERS, LLC, ) | |
| ) | Bankruptcy No. 17-00033 |
| Debtor. ) | |

### ORDER ENTERING TEMPORARY INJUNCTION AND SETTING FINAL HEARING ON DEBTOR'S AMENDED MOTION TO EXTEND THE STAY UNDER 11 U.S.C. § 362

This matter came before the Court for hearing on February 16, 2017 in Sioux City, Iowa. Don Molstad appeared for Debtor Bailey Ridge Partners, LLC ("Debtor"). Bill Miller appeared for Dubuque Bank and Trust ("the Bank"). Wil Forker appeared for Floyd Davis. Jessica Uhlenkamp and Allyson Dirksen appeared for Jerry Ruba. Frank Barron appeared for Paul Engle. David Updegraff appeared for Nicole Grubb-Nearman. Steve Huff appeared for First Dakota National Bank ("First Dakota"). The Court heard argument. The Court deferred ruling to review the record and the law and to give the parties additional time to discuss the specific terms of a potential agreed order. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### BACKGROUND AND ARGUMENTS

Debtor is a pig feeding and housing operation. The Bank is Debtor's primary lender with a lien on Debtor's personal property, real estate (worth about $11.5 million), and proceeds securing a debt of about $11.4 million (using the

contract rate of interest).  Debtor incurred this debt to refinance from a past lender and to make improvements to its facilities.  As a part of these financial arrangements, Floyd Davis, Paul Engle, Jason Grubb, Nicole Grubb-Nearman, and Verlyn Nafe ("the Guarantors") guaranteed Debtor's debt with the Bank.

Debtor's troubles with the Bank began about a year ago.  Debtor had trouble making payments.  In April 2016, the Bank sent Debtors a notice of default.  In July 2016, the Bank sued the Guarantors in state court.  In December, the Bank, Debtor, and the Guarantors participated in mediation, which was unsuccessful.  The Bank restarted foreclosure actions in January and Debtor filed bankruptcy, starting this case and staying the foreclosure actions.  The Bank's lawsuits against the Guarantors, however, are still pending.  There is a summary judgment motion currently on file in these actions.

Before Debtor borrowed money from the Bank, it was involved in a lawsuit in federal court in South Dakota.  That lawsuit started when First Dakota sued Jerry Ruba, who has a minority interest in Debtor, on a promissory note.  Mr. Ruba filed a third-party complaint against Debtor, arguing that Debtor is the real party who owes First Dakota on the note.  He argued that he did not get the benefit of the bargain, that the money he borrowed went directly to Debtor, and that Debtor was to pay First Dakota back on the note.  This action is now, of course, stayed as to Debtor.  Mr. Ruba argues it should also be stayed as to him.  It is unclear whether

2

Mr. Ruba is a guarantor—he is named in Debtor's amended motion to extend the stay—but he does have a minority interest in Debtor.

Debtor and Mr. Ruba seek an order extending the stay in favor of Debtor's members. Debtor argues that it will able to pay the Bank's claim in full, that the lawsuits are an undue hardship against the Guarantors, and that Ms. Grubb-Nearman's putting up her own money to make payroll shows that she is committed to Debtor and that judgment against her would be adverse to the estate.

The Guarantors argue that allowing the lawsuits to continue against them is adverse to Debtor's ability to reorganize. In particular, that the Bank, after getting a judgement against the Guarantors, may be able to levy against the Guarantors' equity in Debtor. They also note that litigation among the Guarantors will probably arise without a stay. The Guarantors argue that, especially because Debtor has sufficient collateral to cover the Bank's claim, this is an unusual circumstance that warrants extending the stay to the Guarantors.

The Bank resists. The Bank argues that Debtor and the Guarantors have not shown unusual circumstances needed to extend the stay. The Bank argues that it has the right to proceed against the Guarantors whether or not Debtor's cash flow or collateral is sufficient for its claim. The Bank also argues that there is no evidence that the Guarantors are unified, that they are being asked to contribute

3

equity, or that they are involved in Debtor's ongoing operation. The Bank argues that, as a result, they are separate from Debtor and the stay should not be extended.

First Dakota joins the Bank's resistance and argues that Mr. Ruba is separate from Debtor and that this is not an unusual circumstance that warrants extending the stay. Mr. Ruba, who has an interest in Debtor, argues that the action should also be stayed as to him. Mr. Ruba argues that, because the case is stayed as to Debtor, he cannot effectively assert his defense—that Debtor owes the money to First Dakota, not him—against Debtor.

## CONCLUSIONS OF LAW AND ANALYSIS

"The automatic stay does not, in general, apply to actions against third parties." Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC), 686 F.3d 916, 921 (8th Cir. 2012). There are, however, two sources of authority for the Court to stay lawsuits against third parties: the Court may extend the stay under 11 U.S.C. § 362 or enjoin the lawsuit through its authority under 11 U.S.C. § 105. See id. 921–27.

Under 11 U.S.C. § 362, the automatic stay may extend to third parties when there are "unusual circumstances"—in particular where "the identity between parties is so great as to make a judgment against the third-party defendant . . . in effect . . . a judgment or finding against the debtor." Id. at 923 (internal quotation marks omitted) (alteration in original). "[A] nonbankrupt codefendant may be

4

protected by section 362(a)(1) if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt defendant/guarantor are closely related." In re Metro Square, No. 4-88-2117, 1988 WL 86679, at *3 (Bankr. D. Minn. Aug. 10, 1988).

The Eighth Circuit has written, however, that "where the proposed action involves only third parties and no estate property, and where an 'unusual-circumstances' 'exception' would be needed to justify extension of the automatic stay, § 105 is the more appropriate source of authority for assessing the propriety of a stay. . . . [A] stay issued pursuant to that section should be treated as an injunction." Panther Mountain, 686 F.3d at 926.

In analyzing a motion to enjoin a lawsuit under § 105, this Court has said that "[t]he power to enjoin creditors' actions against a co-debtor or guarantor should only be used in limited circumstances where a determination is made that failure to so enjoin would adversely affect the bankruptcy estate and pressure the debtor through that third party." In re Three Seas Realty II, L.L.C., No. 10-00948 S, 2010 WL 2857598, at *3 (Bankr. N.D. Iowa July 19, 2010) (quoting River Family Farms, Inc. v. Federal Land Bank of Omaha (In re River Family Farms, Inc.), 85 B.R. 816, 819 (Bankr. N.D. Iowa 1987)) (internal quotation marks omitted). "A preliminary injunction is only warranted if the debtor can show a substantial and adverse impact by the action on the debtor's ability to reorganize."

5

Id. at *4 (citing Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Rest., Inc.), 79 B.R. 992, 1000 (Bankr. N.D. Ind. 1986)).  In deciding whether to enjoin lawsuits under § 105, the Court considers the following factors:

> (1) whether there is a likelihood of successful reorganization;
> (2) whether there is imminent irreparable harm to the estate in the absence of an injunction;
> (3) whether the balance of harms tips in favor of the moving party; and
> (4) whether the public interest weighs in favor of an injunction.

Id.  Because the relief requested is substantively identical, the Court will follow these cases and treat Debtor's motion to extend the stay as a motion to enjoin the subject lawsuits under § 105.

First, the Court finds that there is a likelihood of successful reorganization. Debtor has a clear path for reorganization.  Debtor has a contract in place with Seaboard Foods of Iowa, LLC and is receiving revenue under that contract.  Debtor presented evidence that this contract will provide guaranteed income, that Seaboard has an interest in maintaining the contract, and that Debtor will be able to retool its operation to meet the revenue required to service its debt and cash flow.

The Court also finds that there may be imminent irreparable harm to the estate without an injunction.  Debtor's motion asks for the stay to extend to Debtor's members, all of whom (including possibly Mr. Ruba) are being sued on their guarantees of Debtor's debt to the Bank.  Because these third-parties are not just guarantors, they are members, however, they have a more direct relationship

6

with Debtor, and may be involved in the reorganization effort.  See Metro Square, 1988 WL 86679, at *4 ("[A]ctions against guarantors do not have such direct and immediate consequences upon the debtor as contrasted with the direct relationship between the partner and a partnership.").  Moreover, absent an injunction, the Bank may use a judgment against the members to pressure Debtor through its members.

The Bank argues that there is no evidence that the members are unified, that they are being asked to contribute equity, or that they are involved in Debtor's ongoing operation.  This is not correct as to all members.  Ms. Grubb-Nearman put up thousands of dollars of her own money to keep Debtor afloat within the last month, evidencing commitment to Debtor and the need for such commitment.  She also plays a major role in Debtor's day-to-day operations and long term financial planning.  Continuing litigation against her, or adverse judgment, may disrupt her role in Debtor's ongoing operations and planning and have a substantial and adverse impact on Debtor's ability to reorganize.

Although it is unclear how continued litigation or judgment against other members may affect the estate—and evidence on that effect is needed to justify a permanent stay or injunction—there are summary judgment motions on file in the actions, making that possible harm imminent.  As a result, immediate but temporary action is warranted.

Third, the balance of harms clearly falls in favor of Debtor and Debtor's members. Without an injunction, Debtor's members will possibly be subject to a significant judgment—on a guarantee for an entity that has sufficient collateral to cover the Bank's claim and has a likelihood of reorganizing—and possibly make reorganization impossible. By staying the actions against the members, especially temporarily, the Court could keep the status quo until a full record on the relevant issues can be made with no significant harm to the Bank or to First Dakota.

Finally, public interest weighs in favor of the stay to avoid litigation between the guarantors. There is a likelihood that Debtor will be able to pay its claim. Proliferating litigation between the guarantors—when the Debtor may be able to pay—works against the public interest.

Based on these factors, the Court finds that a temporary injunction, pending final hearing, is warranted. Final hearing is needed to determine whether "the identity between parties is so great as to make a judgment against the third-party defendant . . . in effect . . . a judgment or finding against the debtor," Panther Mountain, 686 F.3d at 923, and so warrant the extending the stay under § 362 or continuing this temporary injunction under § 105. The record on the relevant issues is incomplete. In particular, more evidence on the relationship between each member and Debtor, each member's role within Debtor, each member's willingness to provide further financing to Debtor, the effect on the estate if a

lawsuit goes forward against a member, the effect on the estate if judgment is entered against that member, and any other equitable considerations, is needed to determine whether the stay should extend to some or all of the members.  See, e.g., Three Seas, 2010 WL 2857598, at *4–5 (finding insufficient evidence of "imminent and irreparable harm if preliminary injunction is not granted"); Metro Square, 1988 WL 86679, at *5 (finding identity between debtor and partners based on evidence that partners would contribute to reorganization).

The Court finds that there is the possibility for imminent harm to the estate, that failure to enjoin would pressure the debtor and have a substantial and adverse effect on its ability to reorganize, and that there is no harm from a temporary injunction pending full hearing on these issues.  As a result, the Court enters an injunction staying actions against Debtor's members.

## CONCLUSION

**WHEREFORE**, the state court actions listed in Debtor's Amended Motion to Extend the Stay under 11 U.S.C. § 362 (Doc. 32) and are stayed pending final hearing on the motion.

**FURTHER**, case number CIV 16-4007-RAL in District of South Dakota is stayed pending final hearing.

**FURTHER**, final hearing on Debtor's Amended Motion to Extend the Stay under 11 U.S.C. § 362 is set for

9

**March 23, 2017 at 2:00 p.m.**

in the Bankruptcy Court Room, First Floor, Federal Court House, 320 - 6th Street, Sioux City, Iowa.

Dated and Entered: February 23, 2017

_____
Thad J. Collins
Chief Bankruptcy Judge