# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| BAILEY RIDGE PARTNERS, LLC, | ) | |
| | ) | Bankruptcy No. 17-00033 |
| Debtor. | ) | |

## RULING ON INTERIM FEE APPLICATIONS

Three fee applications came before the Court for hearing on June 5, 2017 in

Sioux City, Iowa.  Don Molstad appeared for Molstad Law Firm, counsel for

Debtor Bailey Ridge Partners, LLC ("Debtor") in supports of its fee application.

Matthew McClintock and Brian Jackiw appeared for Goldstein & McClintock

LLLP ("G&M"), counsel for the Official Committee of Unsecured Creditors ("the

Committee") in support of its application.  Brad Kruse appeared for Dickinson,

Mackaman, Tyler & Hagen, P.C. ("DMTH"), local counsel for the Committee in

support of its application.  Janet Reasnor appeared for the United States Trustee

("UST").  Monica Clark appeared for Dubuque Bank & Trust Company ("the

Bank").  Wil Forker appeared for Floyd "Chet" Davis.  Chad Thompson appeared

for Verlyn Nafe.  Frank Barron appeared for Paul Engle.  David Updegraff

appeared for Nicole Nearman.  Jessica Uhlenkamp and Allyson Dirksen appeared

for Jerry Ruba.  Steve Huff appeared for First Dakota National Bank ("First

Dakota").  The Court heard argument and took the matter under advisement.  This

is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

Committee Counsels' two applications for compensation generated the most objections. Committee Counsel seeks compensation and reimbursement totaling $151,444.73.  In particular, G&M seeks $99,381.50 in compensation and $1,576.10 in expenses and DMTH seeks $49,888.00 in compensation and $599.13 in expenses for work from October 1, 2017 to March 31, 2018, less time entries for preparation and defense of fees removed according to agreement.

Nearly every party, including the UST, objected to these fees.  Those objections generally allege that the Committee took an overactive role in this case and that Committee counsel performed unreasonable and unnecessary or duplicative work, in particular by preparing and revising its own plan and disclosure statement.  The Committee argues that it did not duplicate work and had the statutory authority to prepare and file its own plan and disclosure statement. The Committee asserts this work was necessary to keep Debtor and Debtor's insiders accountable.

Debtor's Counsel's fee application generated one objection.  Debtor's Counsel seeks approval of $64,860.00 in fees and $1,458.04 in expenses for work performed from May 31, 2017 to April 26, 2018.  The Committee objects to 214 hours of time entries.  The Committee argues that these time entries are improperly vague and/or improperly lump together different actions into a single time entry.

## BACKGROUND AND ARGUMENTS

This case has been contentious.  Most of the tension arose between Debtor and Debtor's insiders on one side and the Committee on the other.  In general, these parties have, from the beginning, mistrusted each other.  The Committee was immediately concerned that Debtor's insiders were going to run a controlled sale process to benefit insiders and cut out or reduce payment to unsecured creditors. Debtor and insiders, on the other hand, thought that the Committee was working to sell the assets out from under them through a suggested broker to one of its constituents instead of allowing reorganizing through new equity as Debtor initially planned.  This mistrust continued throughout the case.  Debtor thought that the Committee was rushing and over-litigating the case—raising tangential issues, doing unwarranted work, and attempting to control the case instead of simply having oversight and input and letting Debtor control the case.  The Committee thought that Debtor had too much autonomy and there was a danger of an insider-controlled process that would work against unsecured creditors.

The objections to Committee Counsel's fees, and response thereto, show that these divergent perspectives on what happened during the case have not been resolved.  Both sides allege that the other side caused all of the unnecessary work. Debtor believes that the Committee took a needlessly overactive role in the case. The Committee believes Debtor caused these problems by not turning over

3

documents and not being forthright.  The dispute over which side is responsible for the extensive litigation and mistrust is thus at the core of the present fee dispute.

The parties did not offer evidence on these matters.  Thus, the Court relies on its own observations of the case in addressing these often-irreconcilable perspectives on what happened or should have happened during the case.  In doing so, the Court has reviewed the docket and the many hearings held over the course of this case.  In general, the Court agrees with Debtor and Debtor's insiders.  The Court finds that the Committee probably took a more aggressive posture in this case than was warranted from the beginning.

In particular, the Committee immediately suggested a sale through a particular broker, push the case with document requests through the Court, and filed its own plan.  The Committee notes that it was its prerogative to take these actions that it saw as in the best interests of its constituents.  Although it is true that there is authority to so act, that does not mean that these actions were reasonable and necessary, or in the best interest of the estate.  The Court, from the beginning, noted that it would be watching the fees in this case and would adjust them if the work performed was unreasonable or unnecessary.  In spite of this caution, the Committee attempted to take control of the case from the very beginning.  Instead of letting the Debtor lead the case as debtor-in-possession, the Committee worked the case as if it was the key player.  Although there may be times in a case where a

4

committee should take such a role, the Committee probably acted too quickly, forcefully, and frequently in this case.

The Court agrees with the Committee on some key points.  The Court finds that the Committee is correct that its work in many instances assisted in pushing the case along.  It also helped focus on maintaining value.  Debtor has valuable but time-limited contracts that, as the case went on, necessarily lost value.  There is some truth in Committee Counsels' arguments that it desired to keep the case moving quickly to maintain this value for its constituents.

The Committee in particular notes that it led opposition to Debtor's first plan that would have paid unsecured creditors over 25 years and largely benefited insiders.  The Committee notes that its work lead to rejection of that plan and to the recently confirmed plan that now will likely pay unsecured creditors in full after sale.  The Committee further notes that it needed certain documents necessary for its decisions, and that it had to litigate in order to obtain those documents.

The parties, in large part, dispute who should receive credit for the recently confirmed plan.  The Committee argues that its work led to this plan.  Debtor's Counsel and the other parties argue that Debtor's work reducing the Bank's claim and other actions by Debtor made the plan possible.  In this dispute, the Court finds that while both parties deserve some credit, the much larger share of the credit goes to Debtor and its counsel.

The Court previously heard Committee Counsel's first interim fee
application. At that hearing, the parties made arguments and characterized the case
similar to how they did here. Debtor and Debtor's insiders argued that the
Committee had unnecessarily complicated the case with unnecessary filings and
work and took too active of a role. The Committee responded that it was within its
authority to take such a role and noted that it had to ensure that the case did not
work only to the benefit of insiders. After hearing these arguments, the Court
approved interim payment of 50% of the Committee's fees. The Court held the
other 50% for future determination.

Now, the Committee seeks compensation and reimbursement totaling
$151,444.73 for work performed from October 1, 2017 to March 31, 2018. In
particular, G&M seeks $99,381.50 in compensation and $1,576.10 in expenses and
DMTH seeks $49,888.00 in compensation and $599.13 in expenses, less time
entries for preparation and defense of fees removed according to agreement.

Nearly every party, including the UST, objected to Committee Counsel's
applications for compensation. Those objections generally allege that the
Committee took an overactive role in this case and that Committee counsel
performed unnecessary or duplicative work that did not benefit the estate.

In particular, Nicole Nearman argues that Committee Counsel's fees are
unreasonable because they are much greater than what Debtor's Counsel seeks and

out of line with the amount of unsecured debt in this case.  She argues that
Committee Counsel's work did not benefit the estate.  She does not object to
specific time entries.

Debtor argues that Committee Counsel's rates are out of line with
community standards.  Debtor also argues that Committee Counsel unreasonably
spent 205.05 hours ($71,893.74 in fees) preparing its own plan and disclosure
statement.  Debtor also argues that Committee Counsel performed 23.40 hours
($8,872 in fees) of unnecessary discovery work with respect to the retention of
DreamDirt as a part of Debtor's efforts to sell certain property.    Finally, Debtor
argues that Iowa Counsel and Chicago counsel needlessly spent time reviewing
each other's work and on phone conferences with each.  Debtor argues that this
constitutes duplicative work.  Debtor's objection has a thorough comparison of the
G&M's and DMTH's time entry details showing duplicative work and billing for
intra office conferences.

The Bank also objects to Committee Counsel's fees.  The Bank notes that
the fees are substantially more than Debtor's Counsel and exceed the Committee's
own estimate.  The Bank does not object to specific time entries.

UST objects to G&M's fees. UST divided G&M's application into various
categories.  The largest category by far is G&M's work preparing the Committee's
plan and disclosure statement: 163.5 hours for a total of $59,275.00. This work

7

makes up almost two-thirds of G&M's fee application.  The UST argues that this
work was not reasonable or necessary because it was performed even as the
Committee was working with Debtor on a joint plan.   UST also argues that
G&M's work preparing a 2004 examination motion related to DreamDirt's sale
efforts (about $4,966 in fees) was unnecessary.  Finally, UST argues that G&M's
application shows a great deal of time spent conferencing and reviewing work
between G&M and DMTH.  UST argues that G&M has failed to meet its burden of
proof that this work was reasonable and necessary.  The UST recommends a 50%
reduction in fees.

Similarly, UST objects to DMTH's application for compensation on many of
the same bases: failure to keep the case on track and keep expenses low,
duplicative work, unreasonable and unnecessary work on plan and disclosure
statement, fees associated with 2004 exam with respect to Dream Dirt, and the
hourly rate.  Again, the UST notes that it is DMTH's burden to show that its fees
are reasonable and necessary.  The UST also recommends a 50% reduction in
DMTH's fees.

Verlyn Nafe, Hawk-I Electric Inc., Paul Engle, and Floyd Davis join in these
objections.

The Committee filed an omnibus response to these objections.  The
Committee argues that it had statutory authority to perform the work it did and that

its work was necessary to keep Debtor and Debtor's insiders accountable.  The
Committee sets out its perspective on the case—in particular that it believed that
insiders were attempting to gain a benefit at the expense of unsecured creditors
from the beginning.  Committee Counsel believes it was the key party that helped
avoid that result and lead to the confirmation of a 100% payment plan.

With respect to particular arguments, the Committee argues that its work
benefited the estate by ensuring that there was not an insider-controlled sale
process, that its fee rates are in line with what the Court approved when Committee
Counsel was retained, and that many of the objections are blanket statements that
do not raise specific time entries as unreasonable or unnecessary.  The Committee
notes that the objections make general allegations about Counsel's fees—
comparing them to Debtor's Counsel's fees, for example—and do not address the
relevant issue of whether the work was reasonable or necessary.

Committee Counsel asserts that Debtor's objection fails to show examples of
duplication of work.  Committee Counsel contends that they did not engage in
duplication of effort.  It asserts that Debtor's exhibit that compares time entries and
shows duplication of work does not show actual duplication.

Specifically addressing the UST's and other parties' objection to time spent
preparing its plan and disclosure statement, Committee Counsel argues that it
prepared and filed a plan specifically because Debtor had backed out of

negotiations.  Committee Counsel argues that, when it filed the plan and disclosure

statement, there was no clear way forward for the case and that value was

deteriorating.  Similarly, Committee Counsel argues that the 2004 examination

related to DreamDirt was specifically supported by the UST and was important to

ensuring an honest sale process.  Finally, Committee Counsel argues that the plan

ultimately confirmed in this case is similar to the plan it prepared.  It thus argues

that it played an important and vital role in the confirmed plan.

Debtor's Counsel's fees are also before the Court.  Debtor's Counsel seeks

approval of $64,860.00 in fees and $1,458.04 in expenses for work performed from

May 31, 2017 to April 26, 2018.  The Committee objects to 214 hours of Debtor's

Counsel's time entries.  The Committee argues that these time entries are

improperly vague, improperly lump together different actions into a single time

entry, and/or are not in 1/10th of an hour increments.  The Committee argues that

these time entries are insufficient to show a basis for compensation because they

do not adequately describe the work performed or do not sufficiently break out the

work into specific time entries.  The Committee is the only party to object to

Debtor's Counsel's fee request.

Debtor filed a supplementary objection to Committee Counsel's applications

for compensation.  This was not timely filed and raised a new argument.  The

Committee asks the Court to strike this filing and enter a sanction to deter such filings.  Debtor did not file a response to this motion.

The Federal Rules of Civil Procedure provide: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12.  "[A] district court has considerable discretion in considering a Rule 12(f) motion to strike and that striking a pleading is a drastic remedy which courts should use sparingly."  Estate of Hirata v. Ida, No. CIV. 10-00084 LEK, 2011 WL 3290404, at *4 (D. Haw. July 29, 2011) (internal quotation marks omitted).

The Court here grants the motion to strike, but denies the motion for sanctions.  There is nothing to indicate that Debtor's supplemental objection is a part of a pattern of conduct or filings or otherwise constitutes sanctionable conduct. Striking the filing is a sufficient remedy without sanctions.

## CONCLUSIONS OF LAW AND ANALYSIS

Bankruptcy Code § 330 provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, **the court may award to** a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or **a professional person employed** under section 327 or 1103—

(A) **reasonable compensation for actual, necessary services rendered by** the trustee, examiner, ombudsman, professional person, or **attorney** and by any paraprofessional person employed by any such person; **and**

11

(B)  **reimbursement for actual, necessary expenses**.

11 U.S.C. § 330.  "Section 330 permits the court . . . to award compensation that is

less than the amount requested.  The bankruptcy court has broad power and

discretion to award or deny attorney fees under § 330(a)."  In re Agriprocessors,

Inc., Bankr. No. 08-02751, 2009 WL 4823808, at *2 (Bankr. N.D. Iowa Dec. 8,

2009) (citation omitted).

"The lodestar method, calculated as the number of hours reasonably

expended multiplied by a reasonable hourly rate, is the appropriate calculation of

fees."  Id. at *1.  "To determine the reasonable rates and hours, the Bankruptcy

Code directs courts to consider factors including:

- the time spent;

- the rates charged;

- the necessity of the services for administration of the case; the
  reasonableness of the amount of time spent in light of the complexity,
  importance and nature of the problem, issue or task addressed; and

- the reasonableness of the requested compensation compared to the
  customary compensation charged by comparably skilled practitioners
  in non-bankruptcy cases."

Id. at *1–2 (citing In re Peterson, 251 B.R. 359, 364 (B.A.P. 8th Cir. 2000)).

12

When counsel seeks approval of fees under § 330, it is their burden to meet this standard and show they are entitled to fees: "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by the debtor." In re Living Hope Se., LLC, 509 B.R. 629, 637 (Bankr. E.D. Ark. 2014).

This Court has applied the following general standards in reviewing fees: (1) "Attorneys generally will not be compensated for preparing, submitting or defending their fee applications"; (2) "[S]ecretarial work performed by lawyers" is not compensable; (3) "Time charged for travel should be billed at one-half the standard hourly rate"; and (4) "Fees are not allowed for simply reviewing the work product of another or for duplicative billing by attorneys involved in intra-office conferences." In re Agriprocessors, Inc., 2009 WL 4823808, at *2. "In reviewing and awarding fee applications, the court must make a cost/benefit analysis." In re Cumberland Farms, Inc., 154 B.R. 9, 10 (Bankr. D. Mass. 1993).

## I.    Committee Counsel Fees

When determining appropriate compensation under § 330 specifically in the context of counsel for an unsecured creditors' committee, this Court has said:

> Legal services rendered on behalf of a committee are necessary if they are rendered in furtherance of the committee's duties under § 1103(c) . . . [T]he three basic functions of a committee are 1) to monitor the debtor's operations, 2) to investigate potential insider causes of action, and 3) to negotiate on the plan of reorganization. These functions are

13

intimately tied to promoting the economic interests of the committee
members.

. . .

Although committee functions are fairly broad and important,
committees do not act in the capacity of "Grand Overseer" over every
Chapter 11 case.  Counsel must limit the issues deemed necessary to
investigate and not become overly involved in the case.  A committee's
attorney must use reasonable billing judgment and consider if the costs
of services would be disproportionately large in relation to the size of
the estate or likelihood of success.  The value of the services must be
viewed with the benefit of hindsight and must be reasonable in light of
the outcome.

In re Agriprocessors, Inc., 2009 WL 4823808, at *2–3 (citations omitted) (internal

quotation marks omitted)  (omissions in original) (quoting In re Nat'l Cattle

Congress Inc., No. 93–61986 (Bankr. N.D. Iowa Mar. 26, 1996)).

Applying these principles here, the Court finds that a reduction in

Committee Counsel's fees is appropriate.  The Committee seemed to view its role

as "Grand Overseer" over the case and so became "overly involved in the case."

This manifested itself in Committee Counsel's applications by billing for

time "reviewing the work product of another or for duplicative billing by attorneys

involved in intra-office conferences" and its substantial time preparing and

revising its plan and disclosure statement.  The Court will thus address three

particular billing areas raised by the objections and noted by the Court in its review

of the applications: the DreamDirt episode, duplicative work, and unnecessary

work on the plan and disclosure statement.

14

### a. DreamDirt Episode

Debtor and UST object to Committee Counsel's billing for work on what is referred to in shorthand as the DreamDirt episode. This was a time in the case where Debtor was looking for potential buyers and hired DreamDirt as a broker. The Committee learned that one of Debtors insiders had possibly been sabotaging the sale process by instructing DreamDirt to not market the property. The Committee investigated this matter and prepared for a 2004 examination. Debtor and UST argue that this work is not compensable. The UST alleges that the episode has a "manufactured quality" and Debtor maintains that the Committee's allegations are flatly untrue. The Committee argues that this work was an important part of ensuring an honest sale process and protecting its constituents and maintains that the DreamDirt episode proves that Debtor's insiders were actively sabotaging the sale process.

In fact, the Committee repeatedly points to "the DreamDirt episode" as an example of how Debtor's insiders may have controlled the sale process and cut out unsecured creditors had the Committee not played such an active role. The present record is insufficient, however, to make a conclusive finding about what happened during the DreamDirt episode. Nevertheless, the Court finds that the Committee's work associated with the DreamDirt episode benefited the estate and is properly compensable. Whether or not the underlying allegations were true, the Committee

15

properly investigated the matter and took reasonable and necessary action under
the circumstances.  Committee Counsel's work on the DreamDirt episode is
compensable under § 330.

While this single event does not justify the overbroad role that the
Committee took from the very beginning of the case, it does represent some of the
reasonable work that the Committee did.

### b. Duplicative Work

In reviewing the respective time entry details for the Committee's lawyers—
from G&M (Chicago) and DMTH (Des Moines), it is difficult to directly compare
the two.  DMTH's time entry is strictly chronological while G&M's time entry is
broken out into different categories of work with chronological time entries in each
category.  Side-by-side analysis to determine what entries may be duplicative is
almost impossible.  Exhibit F to Debtor's objection to the Committee's fees,
however, helpfully breaks out the time entry details and thoroughly compares
them, providing a good general sense of duplicative billing.  The exhibit shows
G&M and DMTH billing for the same conferences with each other, reviewing each
other's drafts, editing drafts, reviewing edits, reviewing the same documents
received from other parties, attending the same hearings, and generally performing
duplicative work.  "Fees are not allowed for simply reviewing the work product of
another or for duplicative billing by attorneys involved in intra-office

16

conferences." In re Agriprocessors, Inc., 2009 WL 4823808, at *2.  The Court

finds that Exhibit F shows duplicative billing.

The Court added up the time entries in Exhibit F for each firm for the period

covered by the present fee applications, October 1, 2017 to March 31, 2018.

Exhibit F shows duplicative work of 220.5 hours total: 166.2 hours from G&M and

54.3 hours from DMTH.  Committee Counsel has not shown why this time is not

duplicative or otherwise why it is reasonable and necessary work properly

compensable under § 330.  Committee Counsel simply asserts that it has looked at

Exhibit F, "but the entries listed do not appear to reflect a duplication of effort at

all, and G&M and DMTH both contend that they did not engage in a duplication of

effort."  Committee Counsel does not explain why the time entries set out in

Exhibit F are not duplicative or why the apparently duplicative work was

reasonable and necessary.

The Court finds that Exhibit F largely sets out the duplicative work that is

not compensable.  Committee Counsel's mere assertions to the contrary are

insufficient to meet its burden to show that all of this work was reasonable and

necessary.  The Court does make one major qualification to this finding, however.

The Court requires attorneys not admitted in Iowa to have local counsel—and

requires that local counsel to attend hearings and consult on the case.  Thus, some

duplication of services is to be expected.  The Court finds that the duplication here,

17

however, exceeded that amount—and some reduction is thus required.

Accordingly, the Court reduces these duplicative time entries by 25% for each

firm: G&M by 41.5 hours and DMTH by 13.6 hours.

### c. Excessive Work on Plan

In reviewing these duplicative entries, it became clear that there was more

work than reasonable across the case, but in particular on time spent preparing the

Committee's plan.  The Committee has argued that its attorneys' work was

justified because it had the authority to prepare and file a plan under the Code.  The

Court, however, concludes that the mere existence of the statutory authority to take

an action does not make the action reasonably necessary under § 330.

Here, the Court finds that much of the Committee's work preparing,

drafting, and revising its plan and disclosure statement is not compensable.

Although the Committee may have needed to push the case along, the substantial

time spent drafting the plan document was unnecessary to accomplish that goal.

Moreover, the time entry details show that nearly all of the work on the plan was at

some point reviewed or redrafted by other Committee counsel.

Some of this time is appropriately compensable insofar as it was time spent

"negotiating on the plan of reorganization" or preparing elements of the plan that

was ultimately confirmed in this case.  A review of the time entry detail, however,

shows that much of this time was not spent negotiating—but instead on drafting,

redrafting, and conferencing with each other about the Committee's plan documents. G&M alone spent 163.5 hours preparing these documents. This time demonstrates a failure to "consider if the costs . . . would be disproportionately large in relation to the size of the estate or likelihood of success."

The Court specifically finds on the record before it (mostly the Court's own recollections and belief from observing the case) that the Committee's own separate plan was largely unnecessary. The Court specifically finds that much of the same result could have been accomplished through negotiation. Other parties specifically stated the same view. The Court warned the Committee about being too eager to file its own plan from the beginning. The Court noted that if the Committee decided to march forward with filing its own plan, that decision would get scrutiny when fees were considered. This is the scrutiny the Court promised.

Accordingly, the Court will reduce the duplicative time entries identified by Debtor by an additional 25%. See Harris v. Chipotle Mexican Grill, Inc., No. 13-CV-1719 (SRN/SER), 2018 WL 617972, at *9 (D. Minn. Jan. 29, 2018) (using a percentage based reduction); Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc., No. CV 13-2326 ADM/BRT, 2016 WL 2637801, at *8 (D. Minn. May 6, 2016) (same); Walman Optical Co. v. Quest Optical, Inc., No. 11-CV-0096 PJS/JJG, 2012 WL 3248150, at *14 (D. Minn. Aug. 9, 2012) (same); In re

19

Case 17-00033   Doc 389   Filed 06/28/18   Entered 06/28/18 10:38:07   Desc Main
Document     Page 20 of 24

Robertson Cos., Inc., 123 B.R. 616, 622 (Bankr. D.N.D. 1990) (same).  The Court

thus further reduces G&M's fees by 41.5 hours and DMTH's fees by 13.6.

The Court concludes that G&M performed 190.8 hours compensable under

§ 330.  In its employment application, G&M agreed to a blended rate of $350 an

hour.  Thus, under the lodestar analysis, the Court awards G&M $66,780 in fees,

less time entries for preparation and defense of fees.

The Court also finds that DMTH performed 151.2 hours of work that are

compensable under § 330.  The Court finds that a reasonable rate is $290 and

awards $1,856 for 12.8 hours at half rate for travel time.  The remaining 138.4

hours are compensable at the full rate totaling $40,136, less time entries for

preparation and defense of fees.

## II.    Debtor's Counsel's Fees

Debtor's Counsel seeks approval of $64,860.00 in fees and $1,458.04 in

expenses for work performed from May 31, 2017 to April 26, 2018.  The

Committee objects to 214 hours of Debtor's Counsel's time entries.  The

Committee argues that these time entries are improperly vague, improperly lump

together different actions into a single time entry, and/or are not in 1/10th of an

hour increments.  The Committee argues that these time entries are insufficient to

show a basis for compensation because they do not adequately describe the work

performed or do not sufficiently break out the work into specific time entries.  The

20

Committee does not argue, however, that any of Debtor's Counsel's work was
unnecessary or unreasonable, only that the time entries are insufficient for the
Court to make such a determination under § 330.

"Courts may reject vague, incomplete, or imprecise time entries because
they 'preclude any meaningful review . . . of the fee application for "excessive,
redundant, or otherwise unnecessary" hours and may make it impossible to
attribute a particular attorney's specific time to a distinct issue or claim.'" <u>Frerichs
v. Hartford Life & Acc. Ins. Co.</u>, No. CIV. 10-3340 SRN/LIB, 2012 WL 3734124,
at *5 (D. Minn. Aug. 28, 2012). "Neither the Bankruptcy Code nor the Bankruptcy
Rules prescribe any particular format for a fee application, but it must be specific
enough so that the Court can meet its responsibility to provide meaningful review
of the application." <u>In re Racing Servs., Inc.</u>, Bankr. No. 04-30236, 2004 WL
2191585, at *5 (Bankr. D.N.D. July 14, 2004).

In addition to vague entries, the Committee has also identified time entries
that are block billed and argues that these entries are not compensable. "Block
billing involves 'the lumping together of daily time entries consisting of two or
more task descriptions' and the Eighth Circuit has no requirement against its use."
<u>Harris</u>, 2018 WL 617972, at *12 (citing <u>King v. Turner</u>, 05-CV-388 (JRT/FLN),
2007 WL 1219308, at *3 (D. Minn. April 24, 2007)). Thus, lumping alone is not
fatal to a time entry. <u>In re Keeley & Grabanski Land P'ship</u>, Bankr. No. 10-

21

31482, 2013 WL 4170414, at *8 (Bankr. D.N.D. Aug. 15, 2013) ("These fees—

while lumped—are nevertheless reasonable and are allowed."). Where the bill is

"sufficiently specific to communicate what was done and its connection to the case

[a] disallowance for block billing is unwarranted." King, 2007 WL 1219308, at

*3; see also Harris, 2018 WL 617972, at *12 ("Where block-billed entries

specifically describe tasks accomplished, a blanket reduction for block billing is

not necessary."); Zerorez Franchising Sys., Inc., 2016 WL 2637801, at *7 ("The

block time entries . . . are sufficiently clear and do not warrant reduction.").

Here, the Court finds that neither Debtor's Counsel's imprecise and

somewhat vague entries or block billing warrant a reduction. These time entries

contain a sufficient description of the work performed—particularly in the context

of the other entries—to show an entitlement to compensation.

The results obtained are the most important factor when determining the

proper lodestar amount of fees. Harris, 2018 WL 617972, at *13 ("After the Court

determines the lodestar, it may adjust the figure upward or downward, after taking

into account various considerations, including the most important factor—the

results obtained."). Moreover, the Court finds that "the challenged entries are

sufficiently descriptive, especially when read in context with surrounding time

entries" such that totally disallowing these entries would be inappropriate. Ludlow

v. BNSF Ry. Co., No. 4:12CV3113, 2014 WL 2155086, at *5 (D. Neb. May 22,

2014), aff'd, 788 F.3d 794 (8th Cir. 2015) (denying an objection based on vague time entries).  Thus, the Court here finds these challenged time entries should not be disallowed.

The Court further finds that the overall facts mitigate any vagueness of the time entries.  The time entries contain descriptions of the work performed, and the work performed was connected to this case.  Most importantly, Debtor's Counsel obtained strong results.  As result, the Court will not reduce Debtor's Counsel's fees.  The Court awards Debtor's Counsel $64,860 in fees and $1,458.04 in costs.

## CONCLUSION

**WHEREFORE**, the Committee's Motion to Strike Debtor's Supplementary Objection and Request for Sanctions is GRANTED IN PART.  The Court strikes Debtor's Supplementary Objection to Committee Counsel's Fee Application, Bankr. No. 17-0033, Docket #366.

**FURTHER**, Goldstein & McClintock LLLP's Second Interim Application for Compensation is GRANTED IN PART.  The Court allows G&M compensation of $66,780 in fees, less time entries for preparation and defense of fees removed according to agreement, and $1,576.10 in expenses.

**FURTHER**, Dickinson, Mackaman, Tyler & Hagen, P.C.'s Second Interim Application for Compensation is GRANTED IN PART.  The Court allows DMTH

compensation of $40,136, less time entries for preparation and defense of fees

removed according to agreement, and $599.13 in expenses.

**FURTHER**, Molstad Law Firm's Second Application for Compensation is

GRANTED.  The Court awards Molstad Law Firm $64,860 in fees and $1,458.04

in expenses.

Dated and Entered:

June 28, 2018

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE